UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

YOLANDA BETTY,
on behalf of M.A.T.B.,

    Plaintiff,

               v.

COMMISSIONER OF
SOCIAL SECURITY,

    Defendant.
_____/

Civil Action No. 18-10922
Honorable Terrence G. Berg
Magistrate Judge Elizabeth A. Stafford

**REPORT AND RECOMMENDATION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [ECF NOS. 17, 22]**

Plaintiff Yolanda Betty, on behalf of her minor son M.A.T.B., appeals a final decision of Defendant Commissioner of Social Security (Commissioner) denying M.A.T.B.'s application for supplemental security income benefits (SSI) under the Social Security Act. Both parties have filed summary judgment motions, referred to this Court for a report and recommendation under 28 U.S.C. § 636(b)(1)(B). After review of the record, the Court finds that the administrative law judge's (ALJ) decision is supported by substantial evidence, and thus **RECOMMENDS** that:

- the Commissioner's motion [ECF No. 22] be **GRANTED**;
- Betty's motion [ECF No. 17] be **DENIED**; and

- the Commissioner's decision be **AFFIRMED**, under sentence four of 42 U.S.C. § 405(g).

## I. BACKGROUND

### A. M.A.T.B.'s Background and Disability Application

Born October 25, 2001, M.A.T.B. was 13 years old when Betty filed an application for disability benefits on October 1, 2015. [ECF No. 8-5, Tr. 140]. Betty alleged that M.A.T.B. is disabled by attention deficit hyperactivity disorder (ADHD) and oppositional defiant disorder (ODD) and that the onset date was January 1, 2006. [ECF No. 8-6, Tr. 157]. After a hearing on June 1, 2017, during which M.A.T.B. and Betty testified, the ALJ found that M.A.T.B. was not disabled in an August 2017 written decision. [ECF No. 8-2, Tr. 7-26, 32-55]. The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner, and Betty timely filed for judicial review. [*Id.*, Tr. 1-3; ECF No. 1].

### B. The ALJ's Application of the Disability Framework

A child under the age of 18 will be considered disabled if he or she "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §

1382c(a)(3)(C)(i).  The Commissioner determines whether a child is disabled by analyzing three sequential steps: (1) whether the child is engaged in "substantial gainful activity"; (2) whether the child has any "severe" impairments; and (3) whether the child's impairment or combination of impairments meets, medically equals, or functionally equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listings).  See 20 C.F.R. § 416.924(a); *Barnett ex rel. D.B. v. Comm'r of Soc. Sec.*, 573 F. App'x 461, 462 (6th Cir. 2014).

In analyzing functional equivalence, the ALJ examines the effects of a claimant's impairments on six behavioral domains: (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for yourself, and (6) health and physical well-being.  *Barnett*, 573 F. App'x at 464; 20 C.F.R. § 416.926a(b)(1).  A claimant's impairments "functionally equal the listings" if they result in "'marked' limitations in two domains" or "an 'extreme' limitation in one domain."  § 416.926a(a).

Applying this framework, the ALJ concluded that M.A.T.B. was not disabled.  At the first step, he found that M.A.T.B. had not engaged in substantial gainful activity since the application date.  [ECF No. 8-2, Tr. 13]. Next, the ALJ determined that M.A.T.B. had the severe impairments of

ADHD and ODD.  [*Id.*].  At the third step, he concluded that M.A.T.B.'s impairment did not meet, medically equal, or functionally equal the severity of the listed impairments.  [*Id.*, Tr. 13].

In assessing the six functional equivalence domains, the ALJ found that M.A.T.B. had a less than marked limitation in acquiring and using information, attending and completing tasks, and interacting and relating with others; and no limitations in his abilities to care for himself or to move about and manipulate objects; and less than marked limitation in health and physical well-being.  [*Id.*, Tr. 15-22].  M.A.T.B. was thus found not disabled.  [*Id.,* Tr. 23].

## II.   ANALYSIS

Under § 405(g), this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made in conformity with proper legal standards.  *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks and citation omitted).

Betty argues that the ALJ erred by not finding M.A.T.B. markedly

limited in the domains of acquiring and using information, attending and completing tasks, and interacting and relating with others. Marked limitations in two of these domains would result in a finding of functional equivalency, requiring remand. § 416.926a(a). But Betty has shown no error in the ALJ's decision, and the Court recommends that the decision be affirmed.

## A.

A marked limitation is found when "your impairment(s) interferes seriously with your ability to independently initiate, sustain, or complete activities. Your day-to-day functioning may be seriously limited when your impairment(s) limits only one activity or when the interactive and cumulative effects of your impairment(s) limit several activities." § 416.926a(e)(2)(i).

Examples of "limited functioning" in acquiring and using information include an inability to understand words about space, size or time (like in/under, big/little, morning/night); an inability to rhyme words or the sounds in words; difficulty recalling important things learned in school yesterday; difficulty solving mathematics questions or computing arithmetic answers; and talking only in short, simple sentences and having difficulty explaining oneself. § 416.926a(g)(3). These "examples do not necessarily describe a 'marked' or 'extreme' limitation." *Id.*

Deficiencies in attending and completing tasks can be shown when a child is "easily startled, distracted, or overreactive to sounds, sights, movements, or touch"; is slow to focus on or fails to complete activities of interest (such as games or art projects); repeatedly becomes sidetracked from activities or frequently interrupts others; is easily frustrated and gives up on tasks, including ones the child is capable of completing; and requires extra supervision to stay engaged in an activity. § 416.926a(h)(3).

As to both domains, Betty argues that M.A.T.B. has many issues at school, including inattentiveness, difficulty focusing and staying on task, distractibility, and impulsivity and restlessness. Betty cites in support M.A.T.B.'s 2015 Individualized Education Program (IEP) report. [ECF No. 8-6, Tr. 169]. The IEP also states that M.A.T.B. requires numerous accommodations for test-taking: extended time, small or alternate settings, use of a calculator, modified assignments, and tests read to him. [*Id*.]. Betty further notes that M.A.T.B. was held back in school, [*Id.*, Tr. 161], required on-going intervention in listening, following directions, and working independently, [ECF No. 15-1, Tr. 257], and reportedly failed all of his classes in the fall and spring semesters of his ninth-grade year [ECF No. 8-2, Tr. 53]. Betty argues that under Social Security regulations, "if a child needs a person, medication, treatment, device, or structured, supportive

6

setting to make his functioning possible or to improve the functioning, the child will not be as independent as same-age peers who do not have impairments," and "[s]uch a child will have a limitation, even if he is functioning well with the help or support." S.S.R. 09-01p.

The ALJ acknowledged the above evidence, but also noted that M.A.T.B.'s IEP report showed cognitive abilities ranging from low average to high average, including cognitive strengths in short-term working memory, cognitive processing speed, auditory processing, long-term retrieval, and visual-spatial thinking, with weaknesses in verbal comprehension and fluid reasoning "in an otherwise normal profile." [ECF No. 8-2, Tr. 16, citing ECF No. 8-6, Tr. 169]. The ALJ also cited hearing testimony that M.A.T.B. and his mother agreed that he was doing much better after switching from King High School to Pershing High School; he tried out for football, joined a volunteer organization, and took public transportation (which is a specific consideration for the "acquiring and using information" domain; *see* 20 C.F.R. § 416.926a(g)(2)(v)). [ECF No. 8-2, Tr. 15, 17, citing Tr. 44-50]. As to M.A.T.B.'s ability to attend to and complete tasks, the ALJ noted that M.A.T.B. was prescribed methylphenidate and was found to be in stable condition up to November 2015. [*Id.*, Tr. 17, citing ECF No. 15-1, Tr. 266, 268].

For both domains, the ALJ also relied in part on the only medical opinion of record, that of state agency consultant Zahra Khademian, M.D. Reviewing the evidence, Dr. Khademian opined in January 2016 that M.A.T.B. had no limitation in acquiring and using information, and less than marked limitation in attending and completing tasks. [ECF No. 8-3, Tr. 64]. Dr. Khademian noted that M.A.T.B. had elements of ADHD, was receiving "methylphenidate accordingly," and was in stable condition as of his latest medication review. [*Id.*]. The ALJ assigned significant weight to this opinion, finding that it aligned with M.A.T.B.'s recent improvement after switching schools and his lack of school suspensions since June 2015. [ECF No. 8-2, Tr. 15]. But, based on a review of updated records, the ALJ disagreed with Dr. Khademian's opinion that M.A.T.B. had no limitation for acquiring and using information, and instead found M.A.T.B. to have a less than marked limitation in that domain. [*Id.*].

Betty shows no error in the ALJ's opinion about these two domains. Her evidence is limited to middle school transcripts, which reveal an improvement in his grades and behavior, [ECF No. 15-1, Tr. 250-53], his ninth-grade IEP report as previously discussed, and her testimony that he had failed all of his ninth-grade classes in two semesters. Generally, more is required to show a marked limitation in either of these domains, even for

8

a closed period of disability during M.A.T.B.'s most impaired twelve months. *See Kelly v. Comm'r of Soc. Sec.*, 314 F. App'x 827, 833 (6th Cir. 2009) (claimant was held back a year, had low-average to average academic performance, low-average cognitive functioning, was "about a year behind" in math, but found to have less than marked impairment in acquiring and using information); *Barnett ex rel. D.B. v. Comm'r of Soc. Sec.*, 573 F. App'x 461, 464 (6th Cir. 2014) (claimant with "inattentive, impulsive, and hyperactive behavior" attributable to ADHD had less than marked impairment in attending and completing tasks where ADHD medication made his symptoms more manageable and where he could maintain attention when motivated and when working one-on-one).

For these reasons, substantial evidence supports the ALJ's finding that M.A.T.B. did not have marked limitations in acquiring and using information, or attending to a completing tasks.

**B.**

Some examples of limitations in interacting and relating with others include having no close friends, or having friends that are all older or younger than you; avoiding or withdrawing from people you know, or becoming overly anxious or fearful of meeting new people or trying new experiences; having difficulty playing games or sports with rules; having

difficulty communicating with others (e.g., in using verbal and nonverbal skills to express yourself, carrying on a conversation, or in asking others for assistance); and having difficulty speaking intelligibly or with adequate fluency. 20 C.F.R. § 416.926a(i)(3).

At M.A.T.B.'s March 2014 psychiatric evaluation with North Central Health, treating physician Kehinde Ayeni, M.D., noted that his mother reported him being "aggressive, oppositional, doesn't listen to her or to teachers, he talks out of turn, leaves his seat, and gets into fights." [ECF No. 15-1, Tr. 225]. She stated that he had recently thrown a milk carton at a girl, had been charged with "grade 3 assault," and had "been suspended many times." [*Id.*]. But she also reported that he was doing much better, teachers were not complaining about him anymore, and he had stable sleep, mood and appetite with no side effects to medications. [*Id.*]. Dr. Ayeni diagnosed M.A.T.B. with ODD and ADHD. [*Id.*, Tr. 227]. Later visits show that M.A.T.B.'s grades were improving, but that he continued not to listen to his mother and to have an attitude, and that he had stable sleep, mood and appetite. [*Id.*, Tr. 228-49]. He was suspended from school twice in March 2015, once for fighting and once for a verbal threat to a teacher, and was suspended again for fighting in June 2015. [*Id.*, Tr. 258-60]. An October 2015 treatment plan from North Center Health reported that

M.A.T.B. often argued with adults and lost his temper. [*Id.*, Tr. 289]. But according to notes from his last visit of record with Dr. Ayeni in November 2015, M.A.T.B. had no new problems, was in stable condition, and continued to have no suicidal or homicidal ideation, no side effects to medication, and stable sleep, mood and appetite. [*Id.*, Tr. 268]. His medications were continued without adjustment. [*Id.*].

Though the ALJ accurately noted that there had been no record of suspension since June 2015, [ECF No. 8-2, Tr. 15], an August 2016 youth outcome questionnaire showed M.A.T.B. frequently arguing or speaking rudely to others, frequently complaining about or questioning rules, expectancies or responsibilities, and frequently feeling irritated. [ECF No. 15-1*,* Tr. 301-02]. It also showed that he sometimes has physical fights with family or others his age, and sometimes destroys property on purpose. [*Id.*]. And Betty notes that at the hearing, her attorney provided the ALJ with documentation of a recent incident in Chicago of M.A.T.B. acting unruly and being placed on diversion or voluntary probation for unspecified acts of disorderly conduct. [ECF No. 8-2, Tr. 39-41].

The Commissioner is correct in asserting that most of the evidence Betty relies upon predates the application date and is therefore of questionable relevance to the disability determination. M.A.T.B.'s history of

11

school suspensions would be relevant if it constituted part of a trend that continued into the relevant period, but in fact there are no school suspensions of record whatsoever after the application date. And the ALJ noted that M.A.T.B. had joined the football team and was doing much better since switching schools. [ECF No. 8-2, Tr. 15]. Dr. Khademian also found that M.A.T.B. had less than marked impairment in interacting and relating with others. [ECF No. 8-3, Tr. 64]. He reasoned that M.A.T.B. did not respect personal boundaries, argued, stole, and was defiant, but that he had been consistently taking methylphenidate and his doctor did not see the need to change his medication or recommend other intervention through his November 2015 medication review. [ECF No. 8-3, Tr. 64].

This case is like *Williams o/b/o JNN v. Comm'r of Soc. Sec.*, in that "a portion of the evidence supports the finding of marked limitation in this domain." 2017 WL 8809782, at *6 (E.D. Mich. Oct. 31, 2017), *report and recommendation adopted*, 2018 WL 851282 (E.D. Mich. Feb. 14, 2018). In *Williams*, the claimant had three suspensions for fighting, failed to follow his teacher's guidelines, and argued with his friends. *Id.* His sixth-grade teacher found him to have a very serious limitation in interacting and relating with others, but the consulting and non-examining doctors disagreed. *Id.* The ALJ relied on these opinions and reasoned that the

claimant's ability to participate in team sports also undermined a finding of marked limitation in this domain. *Id.* Citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc), Magistrate Judge Whalen found that a finding of less than marked limitation was within the "zone of choice" accorded to the ALJ. *Id.*

Here, Betty cites evidence that might support a finding that M.A.T.B. had a marked limitation in his ability to interact and related with others, but the record also reflects improvements in M.A.T.B.'s ability in that domain since the application date. The ALJ's finding of less than a marked limitation was within therefore within his zone of choice.

### III.     CONCLUSION

For the reasons stated above, the Court **RECOMMENDS** that Betty' Motion for Summary Judgment [ECF No. 17] be **DENIED**, the Commissioner's Motion [ECF No. 22] be **GRANTED**, and the ALJ's decision **AFFIRMED**.

s/Elizabeth A. Stafford<br>
ELIZABETH A. STAFFORD<br>
United States Magistrate Judge

Dated: March 13, 2019

### NOTICE TO THE PARTIES REGARDING OBJECTIONS

Either party to this action may object to and seek review of this

Report and Recommendation, but must act within fourteen days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.   *Thomas v. Arn*, 474 U.S. 140 (1985); *Betty v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation.  *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  A copy of any objection must be served upon this Magistrate Judge. E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this Report and Recommendation to which it pertains.  Not later than fourteen days after service of objections, **the non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.  The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page

limitation. If the Court determines that any objections are without merit, it may rule without awaiting the response.

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 13, 2019.

                                         s/Marlena Williams
                                         MARLENA WILLIAMS
                                         Case Manager